IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**OHIO FARMERS INSURANCE COMPANY,**

    **Plaintiff,**

    v.

**LAGRETA BURCH,**

    **Defendant.**

Case No. 2:21-cv-2546
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Ohio Farmers Insurance Company's ("Plaintiff" or "Farmers") Motion (i) to enforce the Stay-Put Order issued by this Court on May 26, 2021; (ii) to enforce a settlement agreement signed by Farmers and Defendant LaGreta Burch ("Defendant Burch" or "Ms. Burch") on July 8, 2021 (the "Settlement Agreement" or "Agreement"); and (iii) to require Defendant Burch or her counsel to pay the attorney's fees that Farmers incurred to bring this Motion.  (ECF No. 13) (hereinafter the "Motion to Enforce"). Separately, Plaintiff Farmers seeks leave to file (i) a sur-surreply in response to Defendant Burch's sur-reply to its Motion to Enforce and (ii) a supplement *instanter* in support of its Motion to Enforce.  (ECF Nos. 27-28) (hereinafter the "Motions for Leave").

In response, Defendant Burch argues that (i) she did not breach the Stay-Put Order or the Settlement Agreement; (ii) alternatively, if the Court determines she is in violation of the Settlement Agreement, its terms should be nullified or reformed to render her compliant; and (iii) she should be granted leave to conduct further discovery related to Plaintiff Farmers'

1

misappropriation claims.  (ECF Nos. 19 at Page ID #255-56; 25 at PageID #372) (hereinafter "Defendant Burch's Response and in the Alternative Motion to Nullify and/or Modify").

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Enforce, (ECF No. 13), **DENIES AS MOOT** Plaintiff's Motions for Leave, (ECF Nos. 27-28), and **DENIES** Defendant's requests to (i) nullify or modify the Settlement Agreement and (ii) conduct further discovery related to Plaintiff's claims.  (ECF Nos. 19 at PageID #256; 25 at PageID #372).

## I.

### A. Factual Background

On May 12, 2020, Defendant Burch resigned her role as a Litigation Specialist for Plaintiff Farmer's subsidiary, Westfield Insurance Company ("Westfield"), to join the "Injury Complex Claims Unit" of Farmer's alleged competitor, Wayne Insurance Group ("Wayne").  (ECF No. 1 at PageID #2,7.)

Roughly two months later, on July 29, 2020, Defendant Burch sued her former employer Westfield (and, later, Plaintiff Farmers) in Delaware County, Ohio alleging pregnancy discrimination, harassment, and retaliation (the "Delaware Lawsuit").  (*Id.* at PageID #7.)  As that case progressed through discovery, Plaintiff Farmers learned that Defendant Burch had emailed herself "approximately 77 separate emails containing a total of approximately 867 attached files" in the final month of her employment at Westfield.  (*Id.* at PageID #7-8.)  Among these files were "numerous" Farmers materials, which Ms. Burch admitted in a deposition she planned to use at some point in her future career.  (Dep. of Lagreta L. Burch, ECF No. 4-2 at PageID #62.)

On May 13, 2021, Farmers informed Ms. Burch's counsel that it planned to file various trade secrets misappropriation claims against Ms. Burch based on her admission in the aforementioned deposition. (Def.'s Ex. 2, ECF No. 19-2.) Ms. Burch's counsel responded that she believed the proposed action served as retaliation for Burch's filing of the Delaware Lawsuit. (*Id.*)

On May 17, 2021, Plaintiff Farmers sued Defendant Burch in this Court for trade secret misappropriation in violation of Ohio and federal law. (ECF No. 1.) The next day, Plaintiff moved to temporarily restrain and preliminarily enjoin Ms. Burch from "misappropriating, using, or disclosing, in any way" the alleged trade secrets she retained, "including but not limited to any and all of Plaintiff's documents that Defendant transmitted to her personal email address between April 11, 2020 and May 11, 2020." (ECF No. 4 at PageID #30) (hereinafter the "TRO/PI Motion"). Exhibit B of Plaintiff's TRO/PI Motion contained a catalogue of every file that Ms. Burch allegedly sent to herself during the April-May period in question. (Pl.'s Ex. B, ECF No. 4-3) (hereinafter the "Exhibit B documents"). This catalogue did not account for various boxes of hard copy Farmers documents that Ms. Burch elsewhere admitted to taking when she resigned her position. (Dep. of Lagreta L. Burch, ECF No. 4-2 at PageID #70.)

On May 24, 2021, the Court held a teleconference with the parties to discuss a hearing schedule for Plaintiff's TRO/PI Motion (the "May 24 Conference"). (ECF No. 10.) During this conference, Ms. Burch agreed to forego using the Exhibit B documents until the Court resolved Farmer's motion for emergency injunctive relief. (*Id.*) Two days later, the Court issued an order memorializing the May 24 conference (the "Stay-Put Order"), which stated the following:

> The parties came before the Court for an informal teleconference pursuant to Local Rule 65.1, and discussed the schedule surrounding Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion"), as well as a Stay-Put Order.

3

> The parties agreed and this Court **ORDERS** as follows: As a matter of preservation, Ms. Burch, without agreeing to liability or wrongdoing, agrees not to use any documents listed in Exhibit B attached to Plaintiff's Motion between now and the resolution of the Motion.
>
> In addition, as discussed during the teleconference a hearing will be held in person at 9:00 a.m. on July 8, 2021, in courtroom number 148 belonging to Judge Smith. The parties worked together to determine a schedule for limited discovery and briefing, they submitted that schedule, and this Court **APPROVES** the schedule.

(*Id.*)

On July 1, 2021, the parties informed the Court that they had likely settled Farmer's misappropriation claims. (ECF No. 11.) Accordingly, they asked to vacate the July 8, 2021 hearing set forth in the Stay-Put Order. (*Id.*) The Court subsequently granted their request. (ECF No. 12.)

Ultimately, on July 8, 2021, the parties successfully negotiated and executed the Settlement Agreement now at issue. (Pl.'s Ex. 3, ECF No. 13-4.) Under the Agreement's terms, Farmers promised to release Ms. Burch from liability for its misappropriation claims if, inter alia, she (i) provided to Farmers an "Accounting" of "[a]ll [Farmers] documents and information that she retained at the conclusion of her employment with [Farmers]" and (ii) returned to Farmers "all hard copy [Farmers] documents and information identified as part of the Accounting as being in her possession." (*Id.*)

### B.  The Current Dispute

On July 16, 2021, Plaintiff Farmers notified Defendant Burch that she had yet to provide it with the "Accounting" required by the Settlement Agreement. (Pl.'s Ex. 4, ECF No. 13-5 at PageID #148.) Plaintiff also noted that there were additional upcoming deadlines that the Agreement bound Ms. Burch to meet in order for her to be released from Plaintiff's misappropriation claims. (*Id.*)

4

On July 19, 2021, Defendant Burch responded to Plaintiff Farmers' message by stating that she had already provided it with a satisfactory "Accounting" when she responded to its interrogatories during discovery the month prior. (Pl.'s Ex. 5, ECF No. 13-6.) She added that she would meet the Agreement's next deadline—which, inter alia, required her to return "all hard copy [Farmers] documents and information" identified in the Accounting—by overnighting to Farmers a "hard copy of all [Farmers] documents she used in connection with her Wayne employment." (*Id.*)

The next day, July 20, 2021, Plaintiff Farmers conveyed to Defendant Burch that her interrogatory responses did not constitute a sufficient "Accounting" under the Agreement, in part because they "did not say anything about the hard copy documents in her possession." (*Id.* at PageID #152.) This, according to Farmers, contravened the basic purpose of the "Accounting" provision—which, it argued, was to provide it with a full picture of the documents Defendant took from her employment at Westfield. (Pl.'s Ex. 9, ECF No. 13-10 at PageID #168.) That same day, Farmers became aware that Defendant Burch allegedly made use of two documents listed on Exhibit B of Plaintiff's TRO/PI Motion in the Delaware Lawsuit: one entitled with the filename "Sharing Knowledge Presentation.ppx," and another entitled "CRM budget.pdf." (Pl.'s Ex. 6-8, ECF Nos. 13-7, 13-8, 13-9.) Farmers now contends that Defendant Burch's use of these two documents constituted a violation of the Court's Stay-Put Order. (ECF No. 13.)

On July 21, 2021, Defendant Burch responded to Plaintiff Farmers' demand for a more comprehensive "Accounting" statement by sending it a signed affidavit that affirmed (i) that she had "no paper documents" from Farmers that she "used or opened" during her employment with Wayne, (ii) the only Farmers documents Ms. Burch "looked at or used" at Wayne were

"electronic," rather than paper and (iii) that she had erased all of the electronic files that she "used or looked at" while at Wayne from her devices. (Pl.'s Ex. 9-10, ECF Nos. 13-10, 13-11.)

Simultaneously, on July 21, 2021, Plaintiff Farmers sent Defendant Burch a formal demand letter. (Pl.'s Ex. 11, ECF No. 13-12.) The letter, in sum, threatened that Farmers would (i) seek to enforce the Court's Stay-Put Order and (ii) proceed with its emergency motion for injunctive relief unless, within the next two days, Ms. Burch confirmed (i) the return of "[a]ll" of the "hard copy" Farmers documents she possessed, "regardless" of whether she used them at Wayne; (ii) the destruction of all Farmers documents that she provided to her counsel; and (iii) that she would not use any Farmers documents "going forward," including in the Delaware Lawsuit, "unless they are obtained from [Farmers] in the normal course through discovery." (Pl.'s Ex. 11, ECF No. 13-12 at PageID #182.) These demands were rejected by Ms. Burch in full, who contended (as she does now) that (i) she did not violate the Stay-Put Order when she used various Exhibit B documents in the Delaware Lawsuit; and (ii) that she did not breach the Settlement Agreement, as it only governed the Farmers documents that Ms. Burch "used or referred to" during her employment with Wayne. (Pl.'s Ex. 12, ECF No. 13-13; ECF No. 19.)

Approximately one week later, on July 26, 2021, Plaintiff Farmers, citing the text of the Court's Stay-Put Order and the Settlement Agreement, filed its Motion to Enforce both documents. (ECF No. 13.)

## II.

Plaintiff Farmers contends that (i) Defendant Burch's use of two Exhibit B documents in the Delaware Lawsuit constituted a violation of the Court's Stay-Put Order and (ii) that Defendant Burch's refusal to account for and return any of the hard copy Farmers documents in

6

her possession violates the Settlement Agreement. (*Id.*) Accordingly, Farmers asks the Court to order Ms. Burch to comply with the Agreement. (*Id.*)

A. **Plaintiff's Motion to Enforce the Court's Stay-Put Order**

Plaintiff Farmers contends that Defendant Burch's use of two Exhibit B documents in the Delaware Lawsuit deposition violated the Court's Stay-Put Order, which temporarily required Ms. Burch "not to use" any of the Exhibit B documents until Farmer's TRO/PI Motion was resolved. (ECF Nos. 10, 13-1 at PageID #117.) Accordingly, Farmers now moves the Court to invoke its authority under Fed. R. Civ. P. 16(f)(1)(C) to prohibit Ms. Burch from using any of the Exhibit B documents in the Delaware Lawsuit.[1] *See* Fed. R. Civ. P. 16(f)(1)(C) (vesting federal courts with the power to issue "any just order[], including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order"); (ECF No. 13-1 at PageID #117.)

Defendant Burch, in response, contends in relevant part[2] that the Court's Stay-Put Order only prevented her from "using" the Exhibit B documents in her employment—and not, in other words, as deposition exhibits in the Delaware Lawsuit. (ECF No. 19 at PageID #250.) She argues further that, to the extent she litigates any present or future claim against Plaintiff, her use of the Exhibit B documents is protected under the First Amendment. (*Id.* at PageID #247, 251.)

The Court, without opining on Ms. Burch's First Amendment argument, agrees with Ms. Burch's overall assessment that the Stay-Put Order did not prevent her from using the Exhibit B

---

[1] Defendant Ms. Burch has voluntarily dismissed the Delaware Lawsuit without prejudice, but note that she intends to refile the suit shortly. (*See* ECF Nos. 28, 29.)
[2] Ms. Burch begins with an argument that Plaintiff's Motion for Leave to file various documents under seal should be denied. (*See* ECF Nos. 14, 19.) This Court, however, granted Farmers' request to file these documents under seal. In any event, the subject matter is irrelevant to the issues currently before this Court. As to the second issue addressed by Ms. Burch in her opposition memorandum, she outlines why the Farmers documents she retained were not "trade secrets" that were legally "misappropriated." (*Id.*) This argument is also irrelevant to the issues currently before this Court.

documents to litigate the Delaware Lawsuit. The context of the Stay-Put Order and the transcript of the May 24 Conference reflect that Ms. Burch agreed, as a matter of preserving the status quo, not to use the Exhibit B documents for employment purposes. Nowhere during the hearing or in the Order did the parties discuss Ms. Burch's use of the Exhibit B documents in another lawsuit. Thus, because Ms. Burch's activity in the Delaware Lawsuit did not fall within the Order's scope, it will not be enforced to prohibit Ms. Burch from using Exhibit B documents to litigate any current or future claims she has against Plaintiff Farmers or its subsidiaries.

### B. **Plaintiff's Motion to Enforce the Settlement Agreement**

Separately, Plaintiff Farmers argues that Defendant Burch has "refused to honor the clear terms of the Settlement Agreement" by refusing to account for, and return or destroy, "all" of the Farmers documents she took when she left Westfield to join Wayne.  (ECF No. 13 at PageID #117.)  Accordingly, Plaintiff seeks an Order compelling Ms. Burch to comply with the terms of the Settlement Agreement.  (*Id.*)

Defendant Burch first contends that she did not breach the Settlement Agreement because the Agreement solely pertains to the Farmers documents "she accessed during her employment with Wayne"—which, she asserts, does not include any of the hard copy documents she took when she left Westfield.  (ECF No. 19 at PageID #254.)  Second, Ms. Burch argues that, if the Court finds she breached the Settlement Agreement, it should, for various reasons, (i) decline to enforce it and/or (ii) nullify or reform the Agreement's terms to bring her within the scope of compliance.  (*Id.* at PageID #255-56.)  As elaborated below, the Court disagrees with both of Defendant Burch's positions. The Settlement Agreement will be enforced.

### 1. Source of Authority and Standard of Review

Federal district courts maintain the authority to enforce settlement agreement in litigation pending before them. *Jaynes v. Austin*, 20 F. App'x 421, 424 (6th Cir. 2001) (quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). Before invoking this authority, however, a district court must first assure itself that an enforceable agreement is at issue. *EEOC v. Eby-Brown Co., LLC*, No.1:06-CV-1083, 2007 WL 419882, *1, *5 (S.D. Ind. Nov. 21, 2007). Settlement agreements are, at base, contracts. *Id*. Thus, to determine whether the Agreement is enforceable, the Court must first ascertain whether it satisfies the three core tenets of a valid contractual agreement—that is, whether it came into being after (i) a valid offer and acceptance involving (ii) proper consideration and (iii) an objective manifestation of mutual assent to its terms. *See id.*; *Whitaker v. Assoc. Credit Services, Inc.*, 946 F.2d 1222, 26 (6th Cir. 1991); *Minster Farmers Coop. Exchange Co. v. Meyer*, 117 Ohio St. 3d 459, 2008 Ohio 1259, 884 N.E.2d 1056, ¶ 28.

"Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed." *Michigan Reg'l Council of Carpenters v. New Century Bancorp.*, 99 Fed App'x 15, 20 (6th Cir. 2004) (citations omitted). No such hearing is required, however, if the agreement is "clear and unambiguous and no issue of fact is present." *Id*. Thus, "summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *Id*.

Both parties cite to Ohio law throughout their briefing, and neither party disputes its applicability in relation to the current dispute. (*See* ECF Nos. 13, 19, 20.)

### 2. The Settlement Agreement is Valid and Enforceable

Because part of Defendant Burch's Response and in the Alternative Motion to Nullify and/or Modify contests the enforceability of the Settlement Agreement, the Court addresses those arguments first.

The record demonstrates—and neither party disputes—that the Settlement Agreement was predicated on a valid offer and acceptance. Nevertheless, Defendant Burch argues that the Agreement lacked mutual assent because it was executed "under false pretenses." (ECF No. 19 at PageID #255.) She also provides a list of additional reasons why the Agreement cannot be enforced, which, for example, include assertions that the Agreement "lacked consideration" and is "unconscionable," without any argument or law to support her statements. (*See id.* at PageID #255-56.) None of these arguments is well taken.

### i. Defendant's Mutual Assent Argument

The Court turns first to Defendant Burch's contention that the Settlement Agreement was executed "under false pretenses." (ECF No. 19 at PageID #255.) Specifically, Ms. Burch argues that Plaintiff Farmer's "portrayed its lawsuit against [Ms. Burch] . . . as a legitimate quest to 'protect' what it considered 'trade secrets' from disclosure to a 'competitor.'" (*Id.*) This angle, Ms. Burch claims, caused her to believe that the Settlement Agreement only required her to destroy or return the Farmers documents that she used while employed at Wayne, rather than all of the Farmers documents in her possession. (*Id.*)

In Ohio, "[a] contract is not created unless the [contracting] parties communicate to one another 'a distinct and common intention' to create a binding obligation." *Campanella v. Com. Exch. Bank*, 139 Ohio App.3d 796, 806, 745 N.E.2d 1087 (8th Dist. 2000). Part of this "manifestation of mutual assent" requires that the contracting parties have a "meeting of the minds" as to the essential terms of their agreement. *See, e.g.*, *Kostelnik v. Helper*, 96 Ohio St.3d

10

1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16 (2002). If, for example, the parties to a contract are, at the time of execution, both mistaken about a fact that would materially alter the terms of their deal, there is no "meeting of the minds"—and, thus, no enforceable contract. *See, e.g.*, *Ferguson v. Sharkey Const. Co.*, 75 Ohio Law Abs. 206, 137 N.E.2d 525, 527 (8th Dist. 1956).

Notably, "Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *216 Jamaica Avenue, LLC v. R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008). Rather, "courts properly consider only objective manifestations of intent." *Nilavar v. Osborn*, 127 Ohio App.3d 1, 12, 711 N.E.2d 726 (2nd Dist. 1998). This, in essence, requires an examining court to determine (i) that the agreement's terms are "clear and unambiguous," and (ii) that each party expressly assented to be bound by those terms "by written or spoken words, or by other acts or the failure to act." *216 Jamaica Avenue*, 540 F.3d at 440; *Advance Sign Grp. LLC, v. Optec Displays, Inc.*, 722 F.3d 778, 784 (6th Cir. 2013). If both conditions are present, a "meeting of the minds" has occurred.

Here, Defendant Burch essentially argues that there was no "meeting of the minds" when she signed the Agreement, and, thus, no mutual assent. This contention directly contravenes the language of the Settlement Agreement, which, in relevant part, states the following:

1. Within five (5) business days of the execution of this Agreement by the Parties, Burch shall provide to [Farmers] an accounting (the "Accounting") of:

   a. *All [Farmers] documents and information that she retained at the conclusion of her employment with [Farmers], whether electronically or in hard copy, and regardless of when such documents and information were created, or when she sent such documents and information to her personal email account*;

   b. *The filenames of all [Farmers] documents she used in any way in connection with her employment at Wayne.*

. . .

2. Within three (3) business days of providing the Accounting described in Paragraph l of this Agreement, Burch shall:

    a. *Take all necessary steps to return to [Farmers] all hard copy [Farmers] documents and information identified as part of the Accounting as being in her possession* and destroy and/or permanently delete from any electronic devices, storage devices, and/or personal email accounts all electronic [Farmers] documents and information identified as part of the Accounting as being in her possession, including any copies thereof; and

    b. Provide to [Farmers] a sworn affidavit certifying under penalty of perjury that she has taken all necessary steps to return, destroy, and/or permanently delete all [Farmers] documents and information retained at the conclusion of her employment with [Farmers], has not retained any copies of such documents and information, and did not disclose any [Farmers] documents or information to anyone in connection with her employment at Wayne.

(Pl.'s Ex. 3, ECF No. 13-4. at PageID #141-42) (emphasis added).

The Settlement Agreement's terms clearly and unambiguously convey that it required Ms. Burch to account for, and ultimately return or destroy, "all" of the Farmers documents in her possession—not just a subset of those documents. (*Id.*) Ms. Burch "expressly assented" to those terms when she signed the Agreement. (*See id.* at PageID #145.) Thus, the Court is satisfied that there was an objective "meeting of the minds" sufficient to manifest the parties' mutual assent to the Settlement Agreement. *See 216 Jamaica Avenue*, 540 F.3d at 440.

### ii. Defendant's Remaining Arguments Against Enforceability

Defendant Burch, as noted, also offers a short bullet-point list of additional reasons why the Settlement Agreement should not be enforced. This includes: (i) that Ms. Burch lacked "adequate consideration" for consenting to abide by the Agreement; (ii) that Ms. Burch was under "duress" when she signed the Agreement because she feared that the Plaintiff's lawsuit would harm her job status; (iii) that there was "no consensus [between the parties] on all essential terms," and thus, Plaintiff Farmers is "trying to enforce a term never discussed"; (iv)

12

that the Agreement constituted an "unconscionable" contract of adhesion given an alleged disparity of bargaining power between the two parties; and (v) that enforcement of the Agreement would violate her rights under the First Amendment. (ECF No. 19 at PageID #255-56.) Some of these arguments—particularly the third—were addressed by the Court in the preceding subsection. Only one of them—the "duress" argument—is offered with any analysis or incorporation of supporting facts. All of them are unpersuasive.

To be sure, the Court is satisfied that the Settlement Agreement was predicated on sufficient consideration: Plaintiff Farmers agreed to release Defendant Burch from liability for its misappropriation claims, and Defendant Burch agreed to, inter alia, destroy or return all of the Farmers' documents in her possession. *See* Consideration, Black's Law Dictionary (11th ed. 2019) (defining consideration as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promise"); (*see* also Pl.'s Ex. 3, ECF No. 13-4 at ¶ 8.) Accordingly, having already determined the existence of a valid offer, acceptance, and mutual assent to the Agreement's terms, the Court is satisfied that the Settlement Agreement contains all of the essential elements of an enforceable contract.

In light of their scant factual or legal support, the Court disagrees with Ms. Burch's remaining arguments. Thus, given the record, and absent any identifiable dispute over its material terms, the Court finds that the Settlement Agreement is both valid and enforceable.

### 3. The Court Will Enforce the Settlement Agreement

As noted, the Settlement Agreement requires Defendant Burch to account for, and return or destroy, "[a]ll [Farmers] documents and information that [Ms. Burch] retained at the conclusion of her employment with [Farmers], whether electronically or in hard copy, and regardless of when such documents and information were created, or when she sent such

13

documents and information to her personal email account." (Pl.'s Ex. 3, ECF No. 13-4 at ¶ 1.) Ms. Burch must, therefore, account for and return the hard copy Farmers documents that she has elsewhere admitted to taking in accordance with the terms of the Settlement Agreement. *See Michigan Reg'l Council of* Carpenters, 99 Fed App'x at 20.

### C. **Plaintiff's Motion for Attorney's Fees and Motion for Leave to File a Supplement Instanter**

Plaintiff Farmers additionally moves the Court to require Defendant Burch "and/or her counsel to pay [Plaintiff's] attorney's fees associated with bringing" its Motion to Enforce. (ECF No. 13-1 at PageID #134.) It also asks the Court for leave to (i) respond to Ms. Burch's sur-reply to its Motion to Enforce and (ii) supplement the record for its Motion to Enforce. (ECF Nos. 27, 28.) Given the Court's decision to enforce the Agreement, both of Farmers' requests for leave are moot. However, Farmer's request for attorney's fees—which is based in Fed. R. Civ. P. 16(f)(2)—merits discussion. (*See* ECF No. 13-1 at PageID #133-34.)

Fed. R. Civ. P. 16 lays out the roles and responsibilities of parties and federal courts with respect to pretrial conferences. To ensure compliance with the constraints it prescribes, Rule 16(f) vests federal courts with the authority to sanction parties who either (i) do not appear for, or participate in, a pretrial conference, or (ii) violate a pretrial or scheduling order. Fed. R. Civ. P. 16(f)(1). Part of these sanctions permit federal courts to order violating parties, their attorneys, or both to "pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2).

Here, the only pretrial order Plaintiff accuses Defendant of violating is the Stay-Put Order, which, as discussed, Defendant did not violate. Thus, Plaintiff has failed to show that it is

14

entitled to attorney fees under Rule 16(f)(2). Additionally, the Court finds no good reason to award attorney fees in this situation.

### III.

Thus, for the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Farmer's Motion to Enforce. (ECF No. 13.) To that end, the Court **ORDERS** as follows:

1. Defendant shall fully perform under the terms of the Settlement Agreement. (*See* Pl.'s Ex. 3, ECF No. 13-4.)
2. Upon the completion of such performance, and consistent with Paragraph Eight of the Settlement Agreement, Plaintiff Farmers shall file a notice in this Court dismissing with prejudice the instant case against Defendant Burch. (*See id.* at PageID # 144.)
3. The Court shall maintain limited jurisdiction to enforce this Order.

Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motions for Leave, (ECF No. 27-28), and **DENIES** Defendant's requests to (i) nullify or reform the Settlement Agreement and (ii) seek leave to conduct further discovery in this case. (ECF No. 19 at PageID #255-56.)

The case is to remain open on the docket of this Court.

**IT IS SO ORDERED.**

**12/6/2021**       s/Edmund A. Sargus, Jr.
**DATE**            **EDMUND A. SARGUS, JR.**
                    **UNITED STATES DISTRICT JUDGE**